# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TOM'S MARINE AND SALVAGE, LLC.** | * | **CIVIL ACTION NO.: 15-5622** |
| **and TOM'S WELDING, INC.** | * | |
| | * | **SECTION** |
| **VERSUS** | * | |
| | * | **JUDGE** |
| **BROADWAY INSURANCE AGENCY OF** | * | |
| **BERGEN COUNTY, INC. and JOHN UHR,** | * | **MAG** |
| **Individually** | * | |
| | * | |
| *   *   *   *   *   *   *   * | | |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, come plaintiffs, Tom's Marine and Salvage, LLC and Tom's Welding, Inc., and for their complaint against defendants, Broadway Insurance Agency of Bergen County, Inc. and John Uhr, aver upon information and belief as follows:

1.

Made plaintiffs herein are:

(a) Tom's Marine and Salvage, LLC ("Tom's Marine"), a limited liability company organized under the laws of Louisiana and having its principal place of business in Lafitte, Louisiana; and

(b) Tom's Welding, Inc. ("Tom's Welding"), a Louisiana corporation with its principal place of business in Buras, Louisiana.

2.

Made defendants herein are:

(a) The Broadway Insurance Agency of Bergen County, Inc. ("Broadway"), a

corporation domiciled in New Jersey and doing business in this state as an

insurance broker and agency with its principal place of business in Fair Lawn,

New Jersey; and

(b) John Uhr ("Uhr"), a person of the full age of majority, a former

broker/agent/employee of Broadway, who is, upon information and belief, a

resident of and domiciled in New Jersey.

3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, as

complete diversity exists between the parties and the amount in controversy exceeds

$75,000.

4.

Venue is proper in this judicial district under 28 U.S.C. §1391, because the subject

matter of the insurance policies at issue is located in this district.

5.

Plaintiffs, Tom's Marine and Tom's Welding, conduct business in Louisiana, and

own a number of vessels, property and equipment that are located and operated in and

around Louisiana, including the M/V MISS ELSIE D.  Since 2011, Tom's Marine and

Tom's Welding had contracted with Broadway to procure insurance coverage for various

aspects of their businesses, including worker's compensation, general liability, marine

coverage for their vessels, automotive liability and umbrella liability.

6.

Plaintiffs worked specifically with Uhr at Broadway (hereinafter, collectively referred to as the "Broker") to procure these coverages.

7.

At all times pertinent hereto, Broker held out and represented itself to be a specialist in the field of insurance, specifically including the provision of insurance to marine service companies and vessel operators.

8.

From 2011 through the end of 2014, Uhr, acting on behalf of and in the course and scope of his employment by Broadway, offered to obtain insurance for plaintiffs in exchange for compensation.

9.

Plaintiffs accepted Uhr's offer, and requested that Broker obtain the following forms of insurance coverage:

A.     Commercial General Liability (CGL) Insurance;

B.     Workers' Compensation Insurance;

C.     Marine Protection & Indemnity (P&I) Insurance;

D.     Hull Insurance;

E.     Automotive Liability; and

F.     Umbrella Liability.

3

10.

Broker agreed to obtain the insurance with the coverages and policy limits requested by plaintiffs.

11.

The policies plaintiffs requested were common, and could be written by any one of several insurance companies.  Broker had a duty to plaintiffs to exercise reasonable skill, care, and diligence to procure the requested insurance coverage and policies.

12.

Broadway had a duty to supervise and properly train its employee and agent, Uhr, to obtain the insurance and policy limits requested by plaintiffs.

13.

Uhr and Broadway subsequently sent plaintiffs correspondence indicating that the requested insurance policies and policy limits have been obtained.  Instead, Uhr and Broadway failed to obtain the requested policies and coverages in the amounts requested by plaintiffs because they either neglected to transmit the premium to the insurance company and/or converted the premiums paid by plaintiffs.

14.

Neither Uhr nor Broadway advised plaintiffs that they had failed to obtain the requested policies and coverages for them.

15.

Since 2011, Tom's Marine and Tom's Welding have relied upon the Broker's representations that the businesses were properly insured, and paid premiums in excess of

4

$40,000 annually to the Broker under the impression that their insurance coverages were properly procured and in effect.

16.

## A. Workers' Compensation Coverage

Plaintiffs have been sued multiple times as an employer.  Had Uhr and Broadway obtained and procured the workers' compensation coverage that was requested by plaintiffs, these claims would have been considered an occurrences under the policies and the workers' compensation policies would have provided coverage for the claims. Instead, Tom's Marine has incurred defense costs and is alleged to be indebted to the alleged employees for such sums as the Office of Workers' Compensation deems appropriate for each employee for plaintiffs' alleged workers' compensation obligations. These sums will be shown more fully at trial of this matter.

17.

## B. P&I Insurance

On or about August 29, 2014, Tom's Marine requested that Broker secure a P&I insurance policy for four of its vessels and was told that coverage had been obtained and that it was insured by Meadowbrook Insurance Group under policy No. USA4055085.

18.

In November of 2014, Tom's Marine contacted the Broker regarding the addition of a fifth vessel, the MISS ELSIE D, to marine insurance policy USA4055085.

19.

Tom's Marine specifically informed the Broker that "Port Risk" coverage for the

MISS ELSIE D was not sufficient, as the vessel was to be operated in inland waters of

Louisiana to navigate and to tow barges.

20.

Nonetheless, the Broker proceeded to procure only Port Risk P&I insurance

coverage for the MISS ELSIE D, effective December 3, 2014, without informing Tom's

Marine that coverage lesser than that requested was being procured.  Instead, Broker

assured plaintiffs that the requested P&I Insurance had been obtained, and that the MISS

ELSIE D was properly insured.

21.

On or about December 11, 2014, the MISS ELSIE D was involved in a collision

with the M/V JASON BELCHER while navigating.  This collision resulted in damage to

the MISS ELSIE D, as well as alleged damage to and subsequent loss of use of the

JASON BELCHER.

22.

After submitting a claim to Broker for coverage of this damage under policy,

Tom's Marine received a letter from Meadowbrook Insurance Group declining coverage

for the incident on the basis that the MISS ELSIE D was only insured by it on a "Port

Risk" basis.

23.

Had Uhr and Broadway obtained the marine P&I policy and coverage requested by plaintiffs, and that it represented to plaintiffs that Broker had in fact obtained, this collision would have been considered to have been an occurrence under the policy, and the P&I policy would have provided coverage.

24.

Because the MISS ELSIE D lacked the marine insurance coverage requested by Tom's Marine, Tom's Marine has suffered damages in an amount that will be proven at trial.

25.

In addition to the MISS ELSIE D, other vessels owned by plaintiff, including the M/V MICHAEL T, were placed on Port Risk despite plaintiff specifically stating that the vessels would be operating and working, and requiring full P&I coverage.

26.

These vessels have been damaged and involved in incidents which have been denied because of the vessels' Port Risk insurance status.

27.

Because these vessels lacked the marine insurance coverage requested by plaintiffs, plaintiffs have suffered damages in an amount to be provided at trial.

28.

**C.  CGL Coverage**

Despite agreeing to procure CGL coverage for plaintiffs, upon information and

belief, Broker did not obtain the requested CGL coverage.  In addition, to the extent that

the workers' compensation claims filed against it are considered to be CGL claims, those

claims would have each been considered to be an occurrence under the CGL policy, and

would have been covered by same had Broker complied with the terms of the contract to

procure insurance for plaintiffs.  Plaintiffs are therefore damaged in an amount to be

shown at the trial of this matter.

29.

### D.  Hull, Automotive and Umbrella Insurance

Plaintiffs do not know if the Hull, Automotive, or Umbrella Insurance it requested

was ever obtained.  If not, Plaintiffs are entitled to a refund of the premiums paid.

### Count One – Breach of Contract to Procure Insurance Coverage

30.

Since 2011, plaintiffs expressly requested worker's compensation, CGL, P&I,

hull, automotive and umbrella coverage with Broker for their business.  Further, plaintiffs

relayed to Broker specific instructions with respect to requested coverages.

31.

Broker failed to use reasonable diligence in attempting to procure the requested

insurance for the business of plaintiffs.

32.

Broker moreover neglected to notify Tom's Marine that it had failed to procure the

requested coverage for the MISS ELSIE D and instead bound the vessel solely on a Port

Risk basis, which Broker had been explicitly instructed was not sufficient.

8

33.

Broker neglected to notify plaintiffs that it had failed to procure the requested

worker's compensation coverage and instead continued accepting premiums for worker's

compensation coverage.

34.

Broker neglected to notify plaintiffs that it had failed to procure the requested

CGL coverage and instead continued accepting premiums for CGL coverage.

35.

Broker neglected to notify plaintiffs that it had failed to procure the requested hull,

automotive and umbrella insurance coverages and instead continued accepting premiums

for those coverages.

36.

As plaintiffs had established a relationship with Broker through prior dealings and

the other insurance policies issued to them, Broker's confirmation to plaintiffs that the

requested coverage would be and was procured warranted the assumption that plaintiffs

were properly insured for all requested aspects of the businesses.

37.

Tom's Marine began paying an increased premium for marine insurance at a rate

that reflected the full requested coverage for the MISS ELSIE D, which further warranted

the assumption that the requested coverage had been procured.

38.

If the Broker had used due diligence as agents of Tom's Marine, Tom's Marine

would have had coverage for the damages related to the collision of the MISS ELSIE D

and the JASON BELCHER, worker's compensation coverage for claims brought by

employees, and other coverages as the losses were within the scope of the requested

coverage.

39.

To date, plaintiffs are unaware as to what, if any, insurance coverage has been

actually procured for the business, though the business has been paying premiums for

various types of coverage since 2011.

40.

As such, Broadway and Uhr are jointly, severally and solidarily liable for the

damages suffered by Tom's Marine as a result of their failure to procure the requested

insurance coverage, in such amounts as will be proven at trial.

**Count Two – Negligent Misrepresentation Regarding Insurance**

41.

As agents of Tom's Marine and Tom's Welding, Broker had a legal duty to supply

plaintiffs with correct information regarding their insurance coverage.

42.

Broker breached that duty by failing to notify plaintiffs that the requested

insurance coverages were not procured, or that the coverages that were procured different

from that requested.

43.

The damages suffered by plaintiffs are attributable to plaintiffs' justifiable reliance

on the misrepresentations that proper insurance coverage would be and had been procured by Broker.

44.

As such, Broadway and Uhr are jointly, severally and solidarily liable for the damages suffered by plaintiffs as a result of their misrepresentations concerning the requested insurance coverage in an amount to be proven at trial.

**Count Three – Fraud**

45.

Broker's misrepresentations concerning the insurance coverage procured for plaintiffs were intentionally made with the intention to obtain an unjust advantage in the form of plaintiffs paying additional and/or increased premiums for nonexistent coverage, which constitutes fraud under Louisiana Civil Code article 1953.

46.

Despite having knowledge that the procured coverage was not that which had been requested by plaintiffs and that worker's compensation and the other coverages were not actually procured as requested by plaintiffs, Broker remained silent and neglected to disclose the true coverage to plaintiffs, while invoicing plaintiffs for additional and/or higher premiums.

47.

Further, upon information and belief, the certificates of insurance issued to plaintiffs and their business contacts concerning the insurance coverage for various aspects of their business were forged, as the certificates reflected insurance policies

and/or coverages that did not exist although plaintiffs were paying premiums for and believed it had those coverages in place.

48.

In addition to the aforementioned damages, in such amount as will be proven at trial, the defendants' fraudulent acts render them liable to plaintiffs for damages and attorney's fees, under Article 1958 of the Louisiana Civil Code.

**Count Four – Conversion of Insurance Premiums**

49.

Subsequent to plaintiffs' requests to the Broker concerning procuring the aforementioned insurance coverages, plaintiffs began paying increased and/or additional premiums for the requested coverages.

50.

Upon information and belief, the increased premiums paid by plaintiffs for marine and other insurance coverage were converted by the Broker, as the requested insurance coverage was never procured.

51.

Broker therefore wrongfully took possession of monies belonging to plaintiffs and unjustly enriched itself with those converted funds, after fraudulently leading plaintiffs to believe the additional and/or increased premiums were incurred to pay for the successful procuring of the requested insurance.

**WHEREFORE,** considering the foregoing, plaintiffs, Tom's Marine and Salvage, LLC and Tom's Welding, Inc., pray:

12

1.      That defendants, The Broadway Insurance Agency of Bergen County, Inc. and John Uhr, be summoned to appear and answer, all and singular, the allegations of this Complaint;

2.      That after due proceedings are had, plaintiffs have judgment against defendants, The Broadway Insurance Agency of Bergen County, Inc. and John Uhr, jointly, severely and *in solido* for all damages resulting from the matters described herein, in such an amount as will be proven at trial, plus interest, costs and attorneys' fees; and

3.      For all such other relief to which it is entitled and that justice and the nature of the case will allow.

Respectfully Submitted:

MURPHY, ROGERS, SLOSS,
  GAMBEL & TOMPKINS

 */s/  Timothy D. DePaula*
Timothy D. DePaula, T.A. (#31699)
tdepaula@mrsnola.com
John H. Musser, V (#22545)
jmusser@mrsnola.com
Tarryn E. Walsh (#36072)
twalsh@mrsnola.com
One Shell Square, Suite 400
701 Poydras Street
New Orleans, LA  70139
Telephone: 504/523-0400
Facsimile:  504/523-5574
**Attorneys for Plaintiffs, Tom's Marine and Salvage, LLC and Tom's Welding, Inc.**